# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.   BRIAN BEAIRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-20-472-KEW |
| | ) | |
| 1.   O.K. FOODS, INC., A BACHOCO COMPANY, | ) ) ) | |
| | ) | **Jury Trial Demanded** |
| Defendant. | ) | **Attorney Lien Claimed** |

## AMENDED COMPLAINT[1]

**COMES NOW** the Plaintiff, Brian Beaird, and for his Amended Complaint in the above-entitled action, alleges and states as follows:

### PARTIES

1. Plaintiff, Brian Beaird, is an adult male, who at all times relevant hereto was a resident of Le Flore County, Oklahoma.

2. Defendant O.K. Foods, Inc, a Bachoco Company, is an entity doing business in and around Le Flore County, Oklahoma;

### JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of: (a) violations of the Family Medical Leave Act ("FMLA"); (b) workers' compensation retaliation; (c) discrimination based on disability as prohibited by the Americans With Disabilities Act ("ADA") and the ADA Amendments Act

---

[1] Plaintiff files this Amended Complaint pursuant to Fed.R.Civ.P. 15(a)(1).

("ADAAA"); (d) retaliation for requesting reasonable accommodations as prohibited by the ADA and ADAAA; and (e) discrimination based on age in violation of the Age Discrimination in Employment Act ("ADEA").

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331. The Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claim, and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the actions complained of herein occurred in Le Flore County, Oklahoma. Defendant has a regular and established place of business in Le Flore County, Oklahoma and is doing business in and around such county. Le Flore County is located within the Eastern District of the United States District Court of Oklahoma. Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. To the extent required, Plaintiff has exhausted his administrative remedies. He filed an EEOC Charge of Discrimination on or about June 16, 2020. The EEOC issued a Notice of Right to Sue dated January 11, 2021. And, Plaintiff has timely filed this action within ninety (90) days of his receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Defendant O.K. Foods is a poultry producer. Among its various facilities, it owns and operates a poultry processing plant in Heavener, Oklahoma.

8. Plaintiff, who was born in March 1968, worked at the Heavener plant for

approximately twenty-five (25) years.

9. He initially worked for Defendant through a staffing agency from in or around 1995, until in or around 1997.

10. He was then hired by Defendant, as a permanent, full-time employee working in the Sanitation Department in or around 1997.

11. He continued in this position for approximately three (3) years, at which time he transferred to Maintenance. He then continued his employment until on or about December 22, 2019, at which time he was wrongfully terminated.

12. Throughout his lengthy (near 25-year tenure), Plaintiff was a satisfactory or better employee.

13. He consistently received positive performance evaluations and merit pay increases. And, he was not written up during his employment.

14. Despite his good work performance, Plaintiff was terminated from his employment.

15. On or about December 22, 2019, after clocking in from lunch, Supervisor Frank Mode told Plaintiff to come with him.

16. Mode escorted Plaintiff to a room where Vice President of People Services Christy Terry and Plant Manager Terry Davis were also present.

17. In the meeting, Christy Terry told Plaintiff that his employment was being terminated because Defendant allegedly did not have a job for him.

18. However, Plaintiff (who was 51 at the time) had been performing the same job (working in the tool cage) for about one and one-half years.

19. And, approximately one week after Plaintiff was fired, Defendant hired two individuals, both believed to be under age forty (40), to perform the same duties with which Plaintiff had been charged prior to his termination (i.e., working in the tool cage).

20. Prior to his termination, Plaintiff had sustained on-the-job injuries, which required him to take medical leave and request other reasonable accommodations.

21. More particularly, in or around 2007/2008, Plaintiff sustained an injury to his right arm when it was caught in a machine at work.

22. As a result, Plaintiff was required to be absent from work for approximately eight (8) months.

23. He returned to work thereafter, initially with limitations, but was released to return to work without restrictions about six (6) months later.

24. Then, in or around the March 2017, Plaintiff stepped into a sink hole while walking across Defendant's premises, injuring his left foot, leg and hip.

25. He immediately reported the injury to Mode. And, he was sent to a company-selected physician.

26. The company doctor opined that Plaintiff suffered a sprain. However, for about eight (8) or more months thereafter, Plaintiff continued suffering extreme pain and swelling in his left foot.

27. In fact, his foot swelled up to the extent the skin on his big (hallux) toe burst open.

28. As such, after approximately eight (8) months, and repeatedly requesting additional medical treatment, Plaintiff was referred to a specialist who determined Plaintiff suffered a broken foot, requiring surgery.

29. As a result, beginning in or around early- to mid-2018, Plaintiff was required to be absent from work for about six (6) months to undergo two surgeries and to receive continuing medical treatment.

30. During this period, Plaintiff took *inter alia* FMLA and Short-Term Disability.

31. In light of his medical conditions, Plaintiff is/was a qualified individual with a disability, in that, he suffers/suffered from physical impairments which substantially limit/limited his ability to perform one or more major life activities, including but not limited to his ability to walk, stand and climb.

32. His foot impairment also impacts/impacted his internal bodily processes, including but not limited to his musculoskeletal system. And, Plaintiff has/had a record of such impairment and/or was regarded as having such an impairment.

33. Plaintiff is also a qualified individual with a disability, in that he suffers from diabetes, which substantially limits/limited his ability to perform one or more major life activities, including *inter alia* his ability to eat.

34. His diabetes also impacts/impacted his internal bodily processes, including but

not limited to his musculoskeletal, circulatory, neurological and digestive systems.

35. Moreover, his diabetic condition is specifically recognized as an impairment under the ADA. And, Plaintiff has/had a record of impairment and/or was regarded as having such an impairment. At all relevant times though, he was able to perform the essential functions of his job with or without accommodations.

36. In or around the Fall/Winter 2018, Plaintiff was released to return to work. However, his physician placed him on light duty restrictions, ordering him to stay off his foot.

37. Upon returning to work, Defendant failed to place Plaintiff back in the Maintenance Department.

38. Instead, he was forced to work in the "all fall" area in Processing (where the entrails of the chickens processed at the plant fall and are disposed of).

39. This was so despite the fact that Plaintiff was continuing to heal from having surgery and the raw meat contained infectious bacteria.

40. As a result, after working in the "all fall" area for approximately four (4) days, Plaintiff got a bone infection, requiring him to be absent from work for a couple of days to seek medical treatment.

41. When he returned, he was assigned to work in the tool cage, handing out and tracking tool cage items distributed to employees.

42. He continued in this position for approximately one and one-half years until

he was wrongfully terminated on or about December 22, 2019.

43. During this period, Workers' Compensation Manager Carol Webb constantly questioned when Plaintiff was going to be released from his work restrictions.

44. However, Plaintiff continued to suffer from medical issues, including *inter alia* swelling, as a result of his foot condition.

45. As such, Plaintiff repeatedly asked that he be allowed to seek additional medical treatment from the workers' compensation doctor.

46. However, Webb repeatedly denied Plaintiff's requests, telling him that he needed to go to his "own doctor," that it "ha[d] to be [his] diabetes" causing the issues with his foot.

47. After having been repeatedly denied medical treatment, Plaintiff retained counsel to represent his interests relating to his workers' compensation claim. And, after doing so, Plaintiff was fired.

48. As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I: FMLA

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

49. The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the Family Medical Leave

Act ("FMLA").

50. Plaintiff was entitled to medical leave because he worked for Defendant, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to his need for leave.

51. Plaintiff suffered from a serious health condition, described above, requiring he seek continuing medical treatment by a medical provider.

52. Defendant interfered with Plaintiff's rights under the FMLA by *inter alia* failing to reinstate Plaintiff to the same or equivalent position (in the Maintenance department) after his return from FMLA-qualifying leave.

53. Defendant also retaliated against Plaintiff for his use of FMLA, terminating Plaintiff after taking FMLA leave, *inter alia*.

54. As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

55. As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendant's violation of the FMLA, attorney's fees and costs.

### COUNT II: Workers' Compensation Retaliation

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

56. The matters alleged above constitute retaliation in violation fo the Oklahoma Administrative Workers' Compensation Act.

57. Plaintiff is entitled to relief because he was employed with Defendant; he sustained a job-related injury for which he could assert a claim for benefits under the Administrative Workers' Compensation Act; he received treatment such that Defendant was put on notice or a good faith start of Workers' Compensation proceedings; and he was consequently fired.

58. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income and benefits, past and future, emotional distress and other non-pecuniary losses.

59. Defendant's actions were willful, wanton and/or in reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

## COUNT III: ADEA

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

60. Plaintiff is entitled to relief under the ADEA because, as stated herein, he was over age forty (40); he was qualified for his job; he was discharged; and his job was not eliminated after his termination.

61. As damages, Plaintiff has suffered lost earnings, past and future, and other

equitable and compensatory damages allowed by the Civil Rights Act of 1991. Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct.

### COUNT IV: ADA/ADAAA

For his fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

62. The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disability in violation of the ADA and ADAAA. The matters alleged above also constitute retaliation for having requested reasonable accommodations in violation of the ADA and ADAAA.

63. More specifically, Plaintiff was a qualified individual with a disability, in that, he suffers from impairments, described above, which substantially limit his ability to perform one or more major life activities, as set forth above. Further, Plaintiff's disabilities impact one or more of his internal bodily processes, as shown herein. And, Plaintiff had a record of a disability and was regarded as disabled because he had an actual or perceived impairment; that impairment was neither transitory nor minor; and Defendant was aware of and perceived the impairment at the time Plaintiff was terminated.

64. Despite said impairments, Plaintiff was qualified to perform the essential functions of his job with or without reasonable accommodations at all relevant times hereto.

65. Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

66. Moreover, Plaintiff is entitled to relief because he engaged in a protected activity (requesting reasonable accommodations in the form of *inter alia* leave time and light duty work), suffered adverse actions thereafter, and a causal connection exists between his requests and the adverse actions.

67. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages as allowed by the Civil Rights Act of 1991.

68. Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## **REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant and assess compensatory damages including but not limited to back pay, future wages and other compensatory damages, together with pre- and post-judgment interest, costs, attorney's fees, emotional distress damages, liquidated damages, punitive damages and such other relief as this Court may deem equitable and appropriate or allowed by law.

**RESPECTFULLY SUBMITTED THIS 9th DAY OF FEBRUARY, 2021.**

s/ Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800     (telephone)
(405) 239-3801     (facsimile)
leonardjb@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

## CERTIFICATE OF SERVICE

This is to certify that on this 9th day of February, 2021, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Electronic Mail Notice List:     The following are those who are currently on the list to receive e-mail notices for this case.

Jana Beth Leonard leonardjb@leonardlaw.net, dorfflert@leonardlaw.net
(No manual recipients)

s/ Jana B. Leonard